BILLY J. WILLIAMS
United States Attorney
District of Oregon

PAUL E. SALAMANCA
Deputy Assistant Attorney General
Environment and Natural Resources Division

JOHN P. TUSTIN (Texas State Bar No. 24056453)
Senior Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone:  (202) 305-3022 / Fax:  (202) 305-0506
john.tustin@usdoj.gov

*Attorneys for Federal Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CASCADIA WILDLANDS and OREGON WILD | ) ) ) | Case No. 6:20-CV-1395-MK |
| Plaintiffs, | ) ) ) | FEDERAL DEFENDANT'S REPLY IN SUPPORT OF CROSS-MOTION FOR |
| v. | ) ) | SUMMARY JUDGMENT [ECF No. 26] |
| BUREAU OF LAND MANAGEMENT, | ) ) ) | |
| Federal Defendant, and | ) ) | DATE: January 28, 2021 TIME: 9:00 am |
| SENECA SAWMILL COMPANY, | ) ) ) | LOCATION: videoconference |
| Defendant-Intervenor. | ) ) ) | |

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................... 1

II.    ARGUMENT ........................................................................................... 2

       A.     The trail designation and establishment of the Recreation Management
              Zone comply with FLPMA and satisfy the Court's Order ..................................... 2

       B.     The Project's analysis and disclosure of fire hazard to adjacent communities
              satisfies NEPA and the Court's order ...................................................... 5

       C.     The Court's November 19, 2019 Judgment precludes Plaintiffs' remaining
              claims .................................................................................... 9

       D.     The FLPMA and NEPA claims Plaintiffs attempt to relitigate also fail on
              the merits ............................................................................... 13

              1.    The Project complies with FLPMA ........................................... 13

              2.    The Project complies with NEPA ............................................ 15

       E.     The Court should reject Plaintiffs' NEPA claim on stand condition ................... 17

       F.     The Court may consider the Brooke Declaration ..................................... 19

III.   CONCLUSION ....................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*All. for the Wild Rockies v. Weber,*
  979 F. Supp. 2d 1118 (D. Mont. 2013) ........................................................................... 19

*Alsea Valley All. v. Dep't of Commerce,*
  358 F.3d 1181 (9th Cir. 2004) ....................................................................................... 10

*Am. Rivers v. FERC,*
  201 F.3d 1186 (9th Cir. 1999) ......................................................................................... 6

*Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.,*
  126 F.3d 1158 (9th Cir. 1997) ......................................................................................... 7

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.,*
  462 U.S. 87 (1983) ......................................................................................................... 18

*Bankers Trust Co. v. Mallis,*
  435 U.S. 381 (1978) ......................................................................................................... 9

*Bitterroot Ridge Runners Snowmobile Club v. U.S. Forest Serv.,*
  -- F. App'x -- , 2020 WL 6292628 (9th Cir. 2020) ....................................................... 11

*Cascadia Wildlands v. BLM,*
  410 F. Supp. 3d 1146 (D. Or. 2019) ........................................................................ *passim*

*City of Angoon v. Hodel,*
  803 F.2d 1016 (9th Cir. 1986) ....................................................................................... 15

*Cohen v. Beneficial Indus. Loan Corp.,*
  337 U.S. 541 (1949) ....................................................................................................... 10

*Collord v. U.S. Dep't of Interior,*
  154 F.3d 933 (9th Cir. 1998) .................................................................................... 10, 11

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.,*
  746 F. Supp. 2d 1055 (N.D. Cal. 2009) .......................................................................... 7

*Dep't of Transp. v. Public Citizen,*
  541 U.S. 752 (2004) ....................................................................................................... 18

*Friends of Yosemite Valley v. Kempthorne,*
  520 F.3d 1024 (9th Cir. 2008) ......................................................................................... 7

*Gillespie v. U.S. Steel Corp.,*
  379 U.S. 148 (1964) ....................................................................................................... 10

*Havasupai Tribe v. Robertson,*
  943 F.2d 32 (9th Cir. 1991) ........................................................................................... 18

*Headwaters, Inc. v. BLM,*
  914 F.2d 1174 (9th Cir. 1990) .................................................................................. 14, 15

*HonoluluTraffic.com v. Federal Transit Administration,*
 742 F.3d 1222 (9th Cir. 2014) ................................................ 10

*In re Big Thorne Project,*
 93 F. Supp. 3d 1134 (D. Alaska 2015) ................................... 16

*Inland Empire Pub. Lands Council v. Glickman,*
 88 F.3d 697 (9th Cir. 1996) .................................................. 20

*Inland Empire Pub. Lands Council v. U.S. Forest Serv.,*
 88 F.3d 754 (9th Cir. 1996) .................................................... 5

*Klamath Siskiyou Wildlands Center v. BLM,*
 No. 1:17-cv-0997-CL, 2019 WL 1553673 (D. Or. Feb. 20, 2019)................... 16, 17

*Lands Council v. McNair,*
 537 F.3d 981 (9th Cir. 2008) ................................................ 18

*Morongo Band of Mission Indians v. FAA,*
 161 F.3d 569 (9th Cir. 1998) ................................................ 15

*Nat'l Distrib. Agency v. Nationwide Mut. Ins. Co.,*
 117 F.3d 432 (9th Cir. 1997) ................................................ 10

*Native Ecosystems Council v. Tidwell,*
 No. CV 08-121-M-DWM, 2009 WL 10695236 (D. Mont. June 1, 2009) .............. 16

*Native Ecosystems Council v. U.S. Forest Serv.,*
 428 F.3d 1233 (9th Cir. 2005) .............................................. 16

*Norton v. S. Utah Wilderness All.,*
 542 U.S. 55 (2004)......................................................... 3, 14

*Oregon Wild v. BLM*, No. 6:14-cv-0110-AA,
 2015 WL 1190131 (D. Or. Mar. 14, 2015).................................. 16, 17

*Pacific Coast Federation of Fishermen's Ass'n v. U.S. Department of Interior,*
 929 F. Supp. 2d 1039 (E.D. Cal. 2013) ....................................... 6

*Pauly v. U.S. Dep't of Agric.,*
 348 F.3d 1143 (9th Cir. 2003) .............................................. 11

*Pit River Tribe v. U.S. Forest Serv.,*
 615 F.3d 1069 (9th Cir. 2010) .............................................. 10

*Protecting Arizona's Res. and Children v. Fed. Highway Admin.,*
 718 F. App'x 495 (9th Cir. 2017) ............................................. 7

*Robertson v. Methow Valley Citizens Council,*
 490 U.S. 332 (1989)........................................................... 5

*Sierra Forest Legacy v. Sherman,*
 646 F.3d 1161 (9th Cir. 2011) ................................... 10, 11, 12, 13

*Skagit County Pub. Hosp. Dist. No. 2 v. Shalala*,
    80 F.3d 379 (9th Cir. 1996) ................................................................ 12

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ............................................................... 9

*Swanson v. U.S. Forest Serv.*,
    87 F.3d 339 (9th Cir. 1996) ................................................................ 19

*United States v. Lummi Indian Tribe*,
    235 F.3d 443 (9th Cir. 2000) ................................................................ 9

*United States v. U.S. Bd. of Water Comm'rs*,
    893 F.3d 578 (9th Cir. 2018) ............................................................... 10

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) ................................................................... 15, 18

*Westlands Water District v. U.S. Department of Interior*,
    376 F.3d 853 (9th Cir. 2004) ................................................................ 6

## Statutes

28 U.S.C. § 1291 ............................................................................ 10

43 U.S.C. § 2601 .......................................................................... 1, 6

## Rules

Fed. R. App. P. 4(a) ......................................................................... 9

Fed. R. Civ. P. 58(a) ........................................................................ 9

## Other Authorities

46 Fed. Reg. 18,026 (Mar. 23, 1981) ........................................................... 6

## TABLE OF ACRONYMS

| | |
|---|---|
| BLM | Bureau of Land Management |
| CEQ | Council on Environmental Quality |
| EA | Environmental Assessment |
| ERMA | Extensive Recreation Management Area |
| ESA | Endangered Species Act |
| FLPMA | Federal Land Policy & Management Act |
| NEPA | National Environmental Policy Act |
| RMP | Resource Management Plan |

# I.  INTRODUCTION

The Bureau of Land Management's ("BLM") Thurston Hills Non-Motorized Trails and Forest Management Project ("Project") encompasses two separate actions: a timber harvest named the Pedal Power Timber Sale, and a new non-motorized trail system for mountain biking and hiking.  The timber harvest component provides an estimated 4.0 million board feet of timber from the Harvest Land Base, a land use allocation managed by BLM for the express purpose of sustained yield timber production as required by the 2016 Northwest and Coastal Oregon Resource Management Plan (the "2016 RMP") and in accordance with the Oregon & California Revested Lands Act of 1937 (the "O&C Act"), 43 U.S.C. § 2601.  The trail system component designates 8.5 miles of non-motorized trail where none existed before, and an associated Recreation Management Zone 50 feet to each side from the centerline of the trails. The trail system will connect to another being developed by the Willamalane Park and Recreation District ("Willamalane") on adjacent land and will provide open space and non-motorized recreation opportunities, in accordance with the 2016 RMP.  This carefully crafted Project enjoys local support from the City of Springfield, Willamalane, recreation groups, members of the public, and the regional tourism promotion association.

In Plaintiffs' first challenge to the Project, the Court granted judgment in favor of BLM on all but two narrow claims.  *Cascadia Wildlands v. BLM*, 410 F. Supp. 3d 1146 (D. Or. 2019). Plaintiffs prevailed on their challenge under the Federal Land and Policy Management Act ("FLPMA") that BLM was required to designate a Recreation Management Zone prior to timber harvest.  Plaintiffs also prevailed on their challenge under the National Environmental Policy Act ("NEPA") that BLM did not fully analyze and publicly disclose the degree of fire hazard to adjacent communities.  On remand, BLM has addressed the two narrow deficiencies identified

by the Court.  As directed by the Court, BLM designated trails and an associated Recreation

Management Zone prior to timber harvest, and BLM conducted substantial additional analysis on

the fire hazard to adjacent communities and provided that analysis to the public.

As discussed in BLM's opening brief and this reply, Plaintiffs' second challenge to the

Project suffers from a series of fatal defects.  Their insistence on an entirely forested corridor

along the trails fundamentally misconstrues what the Court decided on the FLPMA claim.  Their

dissatisfaction with BLM's additional analysis on fire hazard fails to identify a procedural defect

under NEPA.  The other claims Plaintiffs raise in their second challenge are either precluded or

waived, and in any event fail on the merits.  The Project satisfies all statutory requirements and

enjoys broad public support.  The Court should deny Plaintiffs' motion for summary judgment,

grant summary judgment in favor of BLM on all claims, and allow the Project to proceed.

## II.  ARGUMENT

### A.    The trail designation and establishment of the Recreation Management Zone comply with FLPMA and satisfy the Court's Order

BLM explained how the Project complies with the Court's September 2019 order because

the 2020 decision designates trails and establishes a Recreation Management Zone prior to

timber harvest.  Fed. Def.'s Mem. in Supp. of Cross-Mot. for Summ. J. 8-11, ECF No. 26 ("Fed.

Def.'s Mem.").  Plaintiffs splice-and-dice the Court's prior order to argue that no timber harvest

can occur in the Recreation Management Zone.  Pls.' Resp. in Opp'n 4-7, ECF No. 31 ("Pls.'

Resp.").  But piecing together snippets of the Court's opinion to support their subjective

preference for a forested corridor along the trails does not show that BLM violated the Court's

order, nor does it show that BLM's actions are arbitrary and capricious.

Plaintiffs place great emphasis on the Court's statement that the "'cut the trees first, zone

the buffer later' argument ignores the Willamalane [Extensive Recreation Management Area

("ERMA")] framework's language and certainly the expectations of the Willamalane Parks and

Recreation District when they collaborated with BLM." *Cascadia Wildlands*, 410 F. Supp. 3d at

1156.  On remand and in accordance with the Court's order, BLM designated, prior to harvest,

the 8.5 miles of trails and established an associated Recreation Management Zone of 50 feet in

both directions from the center line of the trails.  AR04309, 04315-16.  The Zone achieves and

protects the Willamalane ERMA's stated recreation values of creating "open space and non-

motorized trail opportunities."  AR16387.  BLM has also continued to collaborate with

Willamalane Parks and Recreation District.  At an October 2019 meeting, Willamalane agreed

with the tree retention design for the Project and entered into a cooperative agreement with BLM

to facilitate the planning, design, and management of the non-motorized trail system that will be

constructed after timber harvest.  AR00671-76 (agreement), 00677-78 (meeting notes).  The

Mayor of Springfield remains "fully supportive of this project and the dual purposes of timber

harvest and recreational access."  AR00024.  BLM thus fully satisfied the Court's order on

remand as well as any concerns the Court had about coordination with the Willamalane Parks

and Recreation District and local elected officials.

Plaintiffs claim that the Willamalane ERMA establishes different timber management

standards within and outside the Recreation Management Zone.  This argument fails on several

grounds.  First, BLM's interpretation of its own RMP is entitled to substantial deference.  *Norton*

*v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004) (BLM has "a great deal of discretion" in

deciding how to achieve compliance with the resource management plan).  BLM explained how

the Project meets the Willamalane ERMA's recreation values of open space and non-motorized

trail opportunities, and showed how timber harvest does not impact these recreation values.

AR01700, 03630, 16387.  Second, this Court did not dictate what activities could or could not

occur within the Recreation Management Zone once established, and expressly rejected Plaintiffs' preference for a forested corridor. *Cascadia Wildlands*, 410 F. Supp. 3d at 1155-56. Plaintiffs again dodge this passage of the Court's opinion.

Third, Plaintiffs fail to acknowledge that the Willamalane ERMA's stated recreation values are to "create open space and non-motorized trail opportunities." AR16387. Instead, they refer to the general "recreation objectives" and assume that their preference for a forested corridor is what all other visitors want along the trails. As this Court noted earlier, "the [Willamalane ERMA] framework does not prioritize forest canopy or naturalness, and there is no evidence in the record that such values are universal." *Cascadia Wildlands*, 410 F. Supp. 3d at 1155. There is, however, evidence that recreation users want both forested and open trails. AR01700 (recreation report stating "trail users have a variety of preferences for trail settings"), 22260 (minute notes where mountain biking group "agreed that mountain bikers like a variety of trail experiences. Having some sections of trail forested and some sections open is great. Disciples of Dirt is in full support of these trails."). Plaintiffs' claim that "this Court already determined that protecting 60% of the trails is insufficient, and that the buffering requirement applies to all trails" is not supported by the cited portion of the opinion. Pls.' Resp. 6 (citing *Cascadia Wildlands*, 410 F. Supp. 3d at 1156). The claim also assumes that "protection" refers to the forest canopy, when in fact it refers to the non-motorized recreation opportunities created by the trails. In the open areas of the trails, BLM will enhance the trail tread and add technical features to provide a range of recreation experiences and difficulties. AR01698-99.

In sum, BLM complied with the Court's September 2019 Order to designate trails and establish a Recreation Management Zone before timber harvest. The Court should grant summary judgment in favor of BLM on Plaintiffs' FLPMA claim.

B.      The Project's analysis and disclosure of fire hazard to adjacent communities satisfies
        NEPA and the Court's order

BLM provided a substantial amount of additional analysis of the fire hazard to adjacent

communities and disclosed this information to the public, in accordance with the Court's order.

Fed. Def.'s Mem. 12-22.  Though the Project increases fire hazard within the boundaries of the

Project area in the short and intermediate term, it includes measures to reduce the Project's

effects on fire hazard.  NEPA is a procedural statute; so long as "the adverse environmental

effects of the proposed action are adequately identified and evaluated, the agency is not

constrained by NEPA from deciding that other values outweigh the environmental costs."

*Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989); *Inland Empire Pub.*

*Lands Council v. U.S. Forest Serv.*, 88 F.3d 754, 758 (9th Cir. 1996) ("NEPA's goal is satisfied

once [] information is properly disclosed; thus NEPA exists to ensure a process, not to ensure

any result." (citation and quotation omitted)).

Plaintiffs' NEPA argument on fire hazard centers on their criticisms of the no action

alternative.  Pls.' Resp. 11-16.  As explained in BLM's opening brief, the no action alternative

maintains the RMP management direction to harvest the timber from the Harvest Land Base

acreage and compares the Project's activities to the baseline in the short (0-10 years),

intermediate (10-30 years), and long (30-50 years) timeframes.  Fed. Def.'s Mem. 13-14, 16-18.

This approach satisfies both of the Council on Environmental Quality's ("CEQ") interpretations

of the no action alternative.

Plaintiffs' arguments that the no action alternative does not satisfy the first of CEQ's

interpretation (an ongoing program) are unavailing.  They first claim this is an impermissible

new legal argument not raised in the prior litigation, but BLM adjusted the no action alternative

in the 2020 Environmental Assessment ("EA") in response to the Court's order to provide

additional disclosure and analysis of the Project's effects on fire hazard to adjacent communities. BLM showed that the timber sale is part of the RMP's current management direction to harvest timber and include regeneration harvest. There is ample record support for the use of regeneration harvest to generate timber from the Harvest Land Base. *See, e.g.*, AR16403, 17051.

Plaintiffs' suggestion that CEQ's first interpretation is limited to updating a land management plan is without merit; CEQ's example is clearly illustrative, not an exclusive list. Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations, 46 Fed. Reg. 18,026, 18,027 (Mar. 23, 1981) ("The first situation *might involve* an action such as updating a land management plan….") (emphasis added). Nor are Plaintiffs' attempts to distinguish BLM's case law persuasive. The Harvest Land Base is managed for the express purpose of sustained yield timber production, as required by the 2016 RMP and the O&C Act, 43 U.S.C. § 2601. The provision of a statutorily-mandated sustained yield of timber is analogous to requirements to provide water and power. *See Am. Rivers v. FERC*, 201 F.3d 1186, 1200 (9th Cir. 1999) ("[T]he Commission logically concluded that the 'definition of the no action alternative as continued operation of the project under the same terms and conditions as the existing license simply reflects this statutory reality.'" (citation omitted)).[1]

Plaintiffs' argument that the no action alternative does not satisfy the second of CEQ's interpretation (the proposed activity does not take place) likewise lacks merit. BLM explained that in the short term, there would be no timber harvest in the no action alternative and that the fire hazard remains high on 89 acres and mixed on 76 acres. AR03657-58. BLM compared the

---

[1] Contrary to Plaintiffs' statement on page 14 of their response, BLM cited more than just *Pacific Coast Federation of Fishermen's Ass'n v. U.S. Department of Interior*, 929 F. Supp. 2d 1039 (E.D. Cal. 2013), and *Westlands Water District v. U.S. Department of Interior*, 376 F.3d 853 (9th Cir. 2004). *See* Fed. Def.'s Mem. 18-20.

effects of the four action alternatives to this baseline of no timber harvest and disclosed that "by

the end of the short-term timeframe, all 109 acres of harvested stands would have a fire hazard of

High."  AR03659.  Plaintiffs want the no action alternative to assume no timber harvest ever, but

this is contrary to BLM's statutory mandate under the O&C Act and direction in the 2016 RMP.

BLM explained that given the statutory mandate and RMP direction, it was reasonably

foreseeable that timber harvest would occur in the area, even if timber harvest did not occur at

this time.  AR01892, 14861.  Plaintiffs' assumption of no timber harvest ever is also contrary to

a number of Ninth Circuit and district court decisions where the baselines assume the

maintenance of existing trends or management, be it for power contracts, residential land use,

recreation levels in a Wild and Scenic River corridor, or off-highway vehicle routes.  *See* Fed.

Def.'s Mem. 20-22 (citing *Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*,

126 F.3d 1158, 1188 (9th Cir. 1997); *Protecting Arizona's Res. and Children v. Fed. Highway

Admin.*, 718 F. App'x 495, 500 (9th Cir. 2017); *Friends of Yosemite Valley v. Kempthorne*, 520

F.3d 1024, 1038 (9th Cir. 2008); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 746

F. Supp. 2d 1055, 1090 (N.D. Cal. 2009).  The provision of a statutorily-mandated sustained

yield of timber in the no action alternative is in accord with this line of cases.

Plaintiffs claim BLM has the discretion on which harvest method it can use on the

Harvest Land Base.  Pls.' Resp. 15-16.  This is a reprise of Plaintiffs' thinning alternative

previously rejected by the Court.  The Project's first timber harvest purpose and need is "to

adjust the age class distribution within lands administered by the Upper Willamette Field

Office."  AR03596.  Under the 2016 RMP's management direction for Harvest Land Base, *only*

regeneration harvest accomplishes this goal.  *Compare* AR17047-48 (reasons for conducting

regeneration harvest) *with* AR17048 (reasons for conducting commercial thinning).  The Court

*Fed. Def.'s Reply*                                                                                    7

already held "BLM did not analyze thinning in detail because it did not meet its purpose to shift acres from the 70 to 0-10 age class, and the 2016 RMP does not authorize it to use thinning for that purpose." *Cascadia Wildlands* 410 F. Supp. 3d at 1161.

Plaintiffs cite the agency's approach to the wayside aster as evidence that BLM has the discretion to forgo harvest in the Harvest Land Base. Pls.' Resp. 16. As BLM explained in the first round of this litigation,[2] the Project defers harvest on twenty-nine acres of the Harvest Land Base due to presence of wayside aster, a Bureau Sensitive Species,[3] at five sites in the Project area. AR03599 (Table 1), 03623. BLM is able to defer harvest in these areas because the RMP directs BLM to "[p]rovide for conservation and contribute toward the recovery of plant species that are ESA-listed or candidates," AR16843, and to "[m]anage ESA candidate and Bureau Sensitive species consistent with any conservation agreements…." AR16844. Moreover, the wayside aster is subject to an inter-agency conservation agreement and that neither thinning nor regeneration harvest would meet the agreement's stated management action to enhance habitat, nor would harvest meet the RMP's management objectives. AR03624. Consistent with the RMP and the inter-agency conservation agreement for the wayside aster, BLM protects ESA candidate species and Bureau Sensitive Species sites in the Harvest Land Base to avoid the need to list these species under the ESA. AR16483-84. Plaintiffs can point to no equivalent law (like the ESA) or national BLM policy (like the Bureau Sensitive Species policy) that elevates recreation above timber harvest on O&C lands allocated to the Harvest Land Base.[4]

---

[2] *See Cascadia Wildlands v. BLM*, Case No. 6:19-cv-0247-MC, ECF No. 28 at 4-5.

[3] Bureau Sensitive Species are plant or animal species eligible for Endangered Species Act ("ESA") listing or candidate, state listing, or state candidate (plant) status, are on list 1 in the Oregon Natural Heritage Data Base, or are approved for this category by the BLM State Director. AR11688. The wayside aster (an herbaceous perennial) is classified by the BLM as a Sensitive Species. AR03623, 12567.

[4] To the extent Plaintiffs raise a new NEPA argument about the adequacy of the cumulative

BLM's additional analysis on remand satisfies this Court's order to fully analyze and publicly disclose the degree of fire hazard to adjacent communities. The Court should grant summary judgment in favor of BLM on Plaintiffs' NEPA claim.

**C.    The Court's November 19, 2019 Judgment precludes Plaintiffs' remaining claims**

This Court's prior judgment precludes Plaintiffs' FLPMA claims alleging a failure to amend the RMP and non-compliance with framework standards on recreation setting characteristics, and Plaintiffs' NEPA claims regarding impacts to recreation objectives and range of alternatives. Fed. Def.'s Mem. 22-30. Plaintiffs respond with two arguments that attempt to evade the preclusive effect of the Court's prior judgment; neither has merit. Pls.' Resp. 1-3.

Plaintiffs first dispute the finality of the judgment in the first round of this litigation. *Id.* at 1. The November 19, 2019 Judgment is a separate document entering judgment in accordance with Rule 58 and from which an appeal could have been taken. FED. R. CIV. P. 58(a); FED. R. APP. P. 4(a). While a separate document is not a prerequisite to an appeal, Rule 58 protects parties from uncertainty. *United States v. Lummi Indian Tribe*, 235 F.3d 443, 448 (9th Cir. 2000). Plaintiffs themselves requested that the Court enter judgment, which the Court did the same day. Ex. 1 (Nov. 19, 2019 email from Plaintiffs' counsel stating, "I am writing to note that the Court has yet to enter final judgment under FRCP 58 for the above-captioned case, which Judge McShane ruled on in his Sept. 18, 2019 opinion & order."). The November 19, 2019 Judgment is clear evidence of the Court's intent that the September 18, 2019 Opinion and Order is the final decision in the case. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 387 (1978) ("[T]he District Court clearly evidenced its intent that the opinion and order from which an appeal was

---

effects analysis, *see* Pls.' Resp. 15 n.7, this argument is waived. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]rguments not raised by a party in its opening brief are deemed waived." (citation omitted)).

taken would represent the final decision in the case.  A judgment of dismissal was recorded in the clerk's docket."); *cf. Nat'l Distrib. Agency v. Nationwide Mut. Ins. Co.*, 117 F.3d 432, 434 (9th Cir. 1997) ("Had the court entered a separate final judgment subsequent to the dismissal order, we would be confident the court intended no further action in the case.").  There is no credible argument that the November 19, 2019 Judgment is not a final judgment under Rule 58.

Plaintiffs then argue that the Court's prior judgment was not final as it applied to them because it was a remand order.  Pls.' Resp. 1-3.  In the Ninth Circuit, a remand order is final where "(1) the district court conclusively resolves a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable." *Collord v. U.S. Dep't of Interior*, 154 F.3d 933, 935 (9th Cir. 1998) (citation omitted); *Alsea Valley All. v. Dep't of Commerce*, 358 F.3d 1181, 1184 (9th Cir. 2004).  The three factors articulated in *Collard* are "not strict prerequisites, but merely considerations." *United States v. U.S. Bd. of Water Comm'rs*, 893 F.3d 578, 594 (9th Cir. 2018) (citation and quotation omitted); *see also Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152 (1964) ("[T]he requirement of finality is to be given a 'practical rather than a technical construction.'" (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949))).  While a remand order is ordinarily final only for purposes of a government appeal under 28 U.S.C. § 1291, *HonoluluTraffic.com v. Federal Transit Administration*, 742 F.3d 1222, 1229 (9th Cir. 2014), this is not a rigid rule.  *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1075-76 (9th Cir. 2010).  A remand order may be final for purpose of a non-agency litigant's appeal in cases "when the broad relief sought could not be achieved through the action the district court directed the agency to undertake[.]"  *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1175 (9th Cir.

2011).[5]  The Ninth Circuit permits appellate review when the remand "place[s] a judicial

imprimatur on the vast majority of the challenged [decision]."  *Id.*

Application of the familiar three-pronged test in *Collard* and the Ninth Circuit's

interpretation of that test in *Sierra Forest Legacy* makes clear that Plaintiffs could have appealed

the Court's prior judgment on the claims on which they did not prevail.  First, the issues

Plaintiffs seek to relitigate are separate legal issues distinct from those addressed on remand.

The Court conclusively ruled in favor of BLM on the majority of claims in the earlier litigation

and remanded only on the narrow, technical issues of designating a Recreation Management

Zone prior to timber harvest and providing additional analysis and disclosure of the degree of

fire hazard to adjacent communities.[6]  *Cascadia Wildlands*, 410 F. Supp. 3d at 1161.  Second,

although the Court's order would not "force[ ] the agency to apply a potentially erroneous rule,"

it permits adherence to rules that Plaintiffs continue to challenge and that BLM continues to

defend, "which may result in a wasted proceeding."  *Collord*, 154 F.3d at 935; *Sierra Forest

Legacy*, 646 F.3d at 1176.  Finally, although the revised EA allowed for further administrative

proceedings, the Ninth Circuit has "ignored this requirement in the face of a 'cakeless' remand."

---

[5] Plaintiffs claim "the Ninth Circuit has *never* found appellate jurisdiction over a non-agency litigant's appeal from a remand order."  Pls.' Resp. 2 n.1.  This is incorrect.  There are numerous instances where the Ninth Circuit found jurisdiction over remand orders when a non-agency litigant appeals.  *See, e.g.*, *Sierra Forest Legacy*, 646 F.3d at 1176; *Pauly v. U.S. Dep't of Agric.*, 348 F.3d 1143, 1148 (9th Cir. 2003); *Bitterroot Ridge Runners Snowmobile Club v. U.S. Forest Serv.*, -- F. App'x -- , 2020 WL 6292628 (9th Cir. 2020).

[6] Plaintiffs erroneously claim they prevailed on the FLPMA claim concerning regeneration harvest on the Harvest Land Base.  Pls.' Resp. 15 n.8.  The tortured "quotation" on which their argument rests skips over more than 130 words and controlling Ninth Circuit precedent that holds the primary use of O&C Act lands is for timber production.  Despite Plaintiffs' selective editing of the Court's opinion, they cannot escape – or relitigate – the fact that the Court already held "BLM authorized the Pedal Power timber sale consistent with applicable management directives[.]"  *Cascadia Wildlands*, 410 F. Supp. 3d at 1151; Fed. Def.'s Mem. 10, 25.  In other words, BLM lawfully authorized regeneration harvest in the Project area.

*Sierra Forest Legacy*, 646 F.3d at 1176 (citing *Skagit County Pub. Hosp. Dist. No. 2 v. Shalala*, 80 F.3d 379, 384 (9th Cir. 1996)).  Plaintiffs themselves complained in their opening brief that BLM "approv[ed] what is essentially the same Project that this Court has already rejected."  Pls.' Mem. in Supp. of Mot. Summ. J. 1, ECF No. 10.  If Plaintiffs were dissatisfied with the additional procedural steps the Court ordered in its limited remand, they should have appealed the prior decision.

 *Sierra Forest Legacy* is directly on point.  In that case, several environmental groups challenged a 2004 amendment to the land and resource management plan for the Sierra Forest and the Basin Project, a timber harvesting project approved pursuant to the 2004 amendment. Plaintiffs alleged that the plan amendment and project violated NEPA and the National Forest Management Act (the Forest Service's land and resource management plan statute, akin to FLPMA for the BLM).  *Sierra Forest Legacy*, 646 F.3d at 1171-72.  The district court granted summary judgment to the Forest Service on all but one NEPA claim, which alleged the Forest Service had failed to consider an adequate range of alternatives.  *Id.* at 1174.  The district court remanded the decision back to the agency to conduct additional analyses to cure this single procedural defect.  *Id.*  Plaintiffs appealed the district court's grant of summary judgment against them on the remainder of their claims.  The Ninth Circuit concluded that it had jurisdiction and affirmed in substantial part on the merits.  The Ninth Circuit explained that despite the decision in *Alsea*, a remand order was final for purposes of a non-governmental actor's appeal where "the broad relief sought could not be achieved through the action the district court directed the agency to undertake[.]"  *Id.* at 1175.  The panel conceded that it was "theoretically possible that on remand the Forest Service could" take actions to address the claims on which the district court had ruled in the government's favor, but "the final judgment rule deals in practice, not theory."

*Id.* Because the issue that the plaintiffs sought to challenge on appeal was legally distinct from the issue on which they had prevailed below and the district court's order "permits adherence to rules that plaintiffs continue to challenge and the Forest Service continues to defend on appeal," an immediate appeal could be taken. *Id.* at 1175–76.

The reasoning from *Sierra Forest Legacy* applies here. The District Court remanded on two narrow, procedural issues: to designate trails and a Recreation Management Zone prior to harvest, and to conduct additional analysis on the impact of fire hazard to adjacent communities. *Cascadia Wildlands*, 410 F. Supp. 3d at 1161. On everything else, the Court ruled in favor of BLM and placed its imprimatur on the challenged Project. *Sierra Forest Legacy*, 646 F.3d at 1175. BLM cured the procedural deficiencies identified in the Court's September 2019 Order. Plaintiffs are thus precluded from relitigating the claims they lost or could have brought in the first round of this litigation.

**D.**      **The FLPMA and NEPA claims Plaintiffs attempt to relitigate also fail on the merits.**

Even if the Court were to find that preclusion does not apply, the claims Plaintiffs seek to relitigate fail. As discussed in BLM's opening brief, Plaintiffs rely on the same arguments about the same claims in both the first and second rounds of this litigation. Fed. Def.'s Mem. 25-30 (addressing Plaintiffs' challenges to the plan amendment, recreation setting characteristics and recreation objectives, and range of alternatives). In effect, Plaintiffs ask this Court for a do-over on their unsuccessful claims in the hopes of getting a different decision from the one issued by this Court in its prior order.

1.      The Project complies with FLPMA.

Plaintiffs' FLPMA arguments on the plan maintenance document, recreation setting characteristics, and recreation objectives seek to second-guess the BLM's interpretation of its

own resource management plan.  While Plaintiffs may dislike the authorized activities, BLM's interpretation of its own RMP is rational, supported by the record, and entitled to substantial deference.  *Norton*, 542 U.S. at 66.

Plaintiffs' argument about the plan maintenance document attempts to re-write the Court's earlier decision.  Pls.' Resp. 8-11.  Plaintiffs say the Court only "reference[d] the maintenance document" and "ultimately held that, despite this document, the timber harvest restrictions within the [Recreation Management Zone] still apply."  Pls. Resp. 8 n.4.  The Court did not just "reference" the November 2018 plan maintenance document – it included a verbatim block quote.  *Cascadia Wildlands*, 410 F. Supp. at 1154-55 (citing AR16381, 16502).  In the paragraph immediately following this quotation, the Court unequivocally held that regeneration harvest "is not 'plainly inconsistent' with the Harvest Land Base management directives or Willamalane ERMA planning framework."  *Id.* at 1155.  The Court never restricted the activities allowed within the Recreation Management Zone.  Plaintiffs' attempt to force their mistaken interpretation that ERMAs graft new restrictions on timber harvest is precisely why BLM issued the plan maintenance document in the first instance.  AR16381.  The document is not a "significant change to the terms and conditions" of the RMP as Plaintiffs claim, Pls.' Resp. 10-11, because the document is consistent with the direction in the RMP that states "BLM will not defer or forgo timber harvest of stands in the Harvest Land Base for reasons not described in the management direction or this appendix."  AR16382; AR16502.  Plaintiffs' interpretation is also at odds with clear precedent from this Court and the Ninth Circuit that the primary use of O&C Act lands is for timber production to be managed in conformity with the provision of sustained yield.  *Headwaters, Inc. v. BLM*, 914 F.2d 1174, 1183 (9th Cir. 1990).

Plaintiffs' renewed argument about recreation setting characteristics and recreation

objectives is equally unavailing.  Pls.' Resp. 22-23.  The argument is the same as the one this

Court clearly rejected in its September 2019 Order.  Nothing in Plaintiffs' briefs provides any

basis for this Court to revisit its earlier holding that "BLM does not have a clear directive to

preserve the area's natural setting characteristics, and there is no evidence that visitors will be

deprived of 'quality' experiences because portions of the trails pass through regeneration harvest

areas."  *Cascadia Wildlands*, 410 F. Supp. 3d at 1155.

       2.     <u>The Project complies with NEPA.</u>

An agency's range of alternatives is reviewed under a "rule of reason" standard that

"requires an agency to set forth only those alternatives necessary to permit a reasoned choice."

*Headwaters*, 914 F.2d at 1180 (citation omitted); *Vt. Yankee Nuclear Power Corp. v. Nat. Res.*

*Def. Council, Inc.*, 435 U.S. 519, 551 (1978) ("Common sense also teaches us that the 'detailed

statement of alternatives' cannot be found wanting simply because the agency failed to include

every alternative device and thought conceivable by the mind of man.").

Plaintiffs' renewed range of alternatives argument suffers from a host of defects.  First,

the argument is premised on the mistaken belief that the Court restricted activities in the

Recreation Management Zone.  Pls.' Resp. 20-22.  The Court did not.  *Cascadia Wildlands*, 410

F. Supp. 3d at 1155.  Second, Plaintiffs claim – with no support – that their alternatives are

commercially viable and fault BLM for not explaining why the alternatives are not.  This posture

is contrary to well-established principles of review under the Administrative Procedure Act that

it is *Plaintiffs'* burden to show that the range of alternatives is arbitrary and capricious.  *Morongo*

*Band of Mission Indians v. FAA*, 161 F.3d 569, 576 (9th Cir. 1998) ([T]he burden is on the party

challenging the agency action to offer feasible alternatives." (citations omitted)); *City of Angoon*

*v. Hodel*, 803 F.2d 1016, 1022 (9th Cir. 1986).  Plaintiffs' conclusory and unfounded assertions

about commercial viability fall far short of their burden.

Third, even if the Court were to accept the bare assertion that Plaintiffs' new alternatives "inherently generate commercial timber volume," Pls.' Resp. 21, this only addresses the second of two timber harvest purposes and need. AR03598 (identifying the second need "to contribute to the Eugene sustained-yield annual declared Allowable Sale Quantity"). Plaintiffs fail to address the first timber harvest purpose and need, which is to adjust the age class distribution within lands administered by the Upper Willamette Field Office. AR03596. Because Plaintiffs have not shown that their new alternatives adjust the age class distribution, they have not shown that the new alternatives are viable. *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1247 (9th Cir. 2005) ("Alternatives that do not advance the purposes of the [project] will not be considered reasonable or appropriate." (citation omitted)). Finally, even if Plaintiffs had produced any record support for the economic viability of their alternatives (which they have not), economic forecasts are well within BLM's expertise and entitled to judicial deference. Fed. Def.'s Mem. 30 (citing *Native Ecosystems Council v. Tidwell*, No. CV 08-121-M-DWM, 2009 WL 10695236, at *4 (D. Mont. June 1, 2009), *aff'd*, 371 F. App'x 718 (9th Cir. 2010); *In re Big Thorne Project*, 93 F. Supp. 3d 1134, 1143 (D. Alaska 2015), *aff'd*, 691 F. App'x 417 (9th Cir. 2017)).

The two district court cases Plaintiffs cite about the range of alternatives are inapposite. Pls.' Br. 20-21 (citing *Oregon Wild v. BLM*, No. 6:14-cv-0110-AA, 2015 WL 1190131, at *13 (D. Or. Mar. 14, 2015) and *Klamath Siskiyou Wildlands Center v. BLM*, No. 1:17-cv-0997-CL, 2019 WL 1553673, at *10-11 (D. Or. Feb. 20, 2019). In both cases, BLM analyzed just two alternatives, an action and a no action alternative. Here, BLM analyzed five alternatives in detail (four action and one no action) with a range of harvested acreage. AR03621 (Table 4,

comparing alternatives and showing harvest on zero, 109, and 165 acres). BLM also considered

an additional five alternatives, but eliminated them from further analysis because they did not

satisfy the Project's timber harvest purpose and need to adjust the age class distribution and to

contribute to the Allowable Sale Quantity. AR03621-24. The cases are further distinguishable

because BLM either did not dispute the reasonableness of plaintiffs' alternative, or agreed that

the proffered alternative satisfied the goals of the challenged project. *Oregon Wild*, 2015 WL

1190131, at *5; *Klamath Siskiyou Wildlands Ctr.*, 2019 WL 1553673, at *6. Here, BLM

responded to Plaintiffs' proposals for new alternatives and reasonably explained why thinning

would not satisfy the Project's purpose and need. AR03623, 14857-58.

**E.      The Court should reject Plaintiffs' NEPA claim on stand condition.**

Federal Defendants provided multiple, solid grounds for the Court to reject Plaintiffs'

argument about changed baseline conditions: Plaintiffs waived the claim by not raising it in the

administrative process, the claim attempts to second-guess BLM's scientific judgment and

technical analysis, and it flyspecks the EA on an inconsequential issue. Fed. Def.'s Mem. 31-33.

Plaintiffs' response fails to rebut any of these arguments.

Plaintiffs claim their Protest Point #12 sufficiently raised during the administrative

process the issue of a changed baseline in stand conditions. Pls.' Resp. 18-20 (citing AR00395-

97). As BLM noted in the opening brief, this statement only mentions fire hazard and fire risk,

and says nothing about the technical, and more specific, issue of stand composition analysis that

Plaintiffs present for the first time in this litigation. Fed. Def.'s Mem. 31-32 (citing AR00395-

97). Plaintiffs claim BLM was "functionally on notice" about the adequacy of the fire analysis,

Pls.' Resp. 19, but *none* of the cited record citations discuss a change in baseline conditions; they

discuss only fire hazard in general. Plaintiffs are sophisticated and frequent litigants represented

by counsel in both the administrative proceedings and the litigation over this Project.  AR00398

(counsel's signature on Plaintiffs' comments on the revised EA).  Their failure to object to the

stand composition analysis with the requisite specificity during the administrative process results

in waiver of the claim.  *Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 764-65 (2004)

("Because respondents did not raise these particular objections. . . [they] have therefore forfeited

any objection to the [environmental assessment] on [those] ground[s]."); *Havasupai Tribe v.*

*Robertson*, 943 F.2d 32, 34 (9th Cir. 1991) ("Absent exceptional circumstances, such belatedly

raised issues may not form a basis for reversal of an agency decision." (citing *Vt. Yankee Nuclear*

*Power Corp. v. NRDC*, 435 U.S. 519, 553-54 (1978))).

      The stand condition claim also fails on the merits.  Plaintiffs concede, as they must, that

Courts defer to the scientific judgment of agency experts.  Pls.' Resp. 18; *Balt. Gas & Elec. Co.*

*v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983); *Lands Council v. McNair*, 537 F.3d 981,

993 (9th Cir. 2008).  Yet they second-guess BLM's updated approach and mischaracterize the

2016 RMP dataset as "broad spectrum" data substituted for site-specific analysis.  Pls.' Resp. 18.

To the contrary, BLM incorporated the 2016 RMP dataset as *one* of the outputs on the GIS fire

analysis tool.  Decl. of Rebecca Brooke ¶ 11, ECF No. 27 ("Brooke Decl.").[7]  As explained in

the 2019 fuels specialist report, BLM also used data from LANDFIRE (a database that includes

geo-spatial layers such as historic conditions, biophysical settings, vegetation conditions class),

Lane County's Community Wildfire Protection Plan (urban development and future planning),

and other sources with site-specific information, such as the Thurston Hills natural area

---

[7] Plaintiffs suggest Rebecca Brooke cannot provide a declaration because she is not the fuels specialist.  Pls.' Resp. 17.  This is nonsense.  Ms. Brooke is the Field Manager for the Upper Willamette Field Office and is the responsible official for all decisions in that office.  Brooke Decl. ¶¶ 1, 2.  The information in Ms. Brooke's declaration is based on her personal knowledge as well as input from the staff she supervises as part of her official duties.  *Id.* ¶ 3.

management plan, Rivers to Ridges vision plan, and Eugene/Springfield metro plan.  AR02332.

These datasets supplemented site visits, visual inspection, and professional modeling conducted

by the fuels specialist in the revised report.  *Id.*  BLM did not "replace" the fuel specialist's

expert analysis with the 2016 RMP dataset; it used the 2016 RMP dataset to update the expert

analysis in a manner that is consistent with other timber management projects in BLM's

Northwest District.  Brooke Decl. ¶ 11.

Notably, although Plaintiffs complain about differences between the two baselines, they

*still* do not dispute the characterization of the stand condition in the 2019 report.  Nor do

Plaintiffs dispute that BLM disclosed the structural condition of the stands in the 2019 fuels

specialist report and 2020 EA, or that BLM made these analyses available to the public.

Plaintiffs essentially are complaining that the 2019 fuels specialist report and 2020 EA rely on

more accurate and detailed information than was contained in the 2018 fuels specialist report.

Reliance on more accurate information that was available to the public fails to show that BLM's

NEPA analysis is arbitrary and capricious.  *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th

Cir. 1996) (Courts are to apply a "rule of reason" and "need not 'fly-speck' the document and

'hold it insufficient on the basis of inconsequential, technical deficiencies….'" (citation

omitted)); *All. for the Wild Rockies v. Weber*, 979 F. Supp. 2d 1118, 1128 (D. Mont. 2013), *aff'd*,

639 F. App'x 498 (9th Cir. 2016) (applying the fly-specking principle to an environmental

assessment).

F.      **The Court may consider the Brooke Declaration.**

Plaintiffs ask the Court to reject the Brooke Declaration, but this request is not an

evidentiary objection that complies with Local Rule 56-1.  *See* Pls.' Resp. 17 n.9; *id*. at 23.

Should the Court consider Plaintiffs' objection, it is without merit.  BLM explained that the

Brooke declaration satisfies the second and third narrow exceptions to the record review rule. Fed. Def.'s Mem. 32 n.12 (citing *Inland Empire Pub. Lands Council v. Glickman*, 88 F.3d 697, 703-04 (9th Cir. 1996)).  The declaration explains that the 2019 fuels specialist report used the structural stage dataset developed for the 2016 RMP as one of the outputs on the GIS fire analysis tool.  Brooke Decl. ¶ 11.  The declaration does not "establish compliance with the law" as Plaintiffs claim, Pls.' Resp. 17 n.9, but rather shows that BLM considered the relevant information of the RMP dataset as one of the updated outputs of the GIS analysis.  Had Plaintiffs raised the issue about stand baseline conditions during the administrative process, BLM could have explained in a record document why the 2019 fuels report characterized the stands as "young, high density" and "mature, mixed canopy."  AR02330.

## III.  CONCLUSION

BLM satisfied this Court's September 2019 Order on remand.  BLM designated trails and an associated Recreation Management Zone prior to timber harvest.  BLM also conducted additional analysis on fire hazard and made that analysis available to the public.  The Court should grant BLM's motion for summary judgment on all claims and deny Plaintiffs' motion for summary judgment in its entirety.  The Project enjoys broad public support and should be allowed to proceed.


Respectfully submitted on this 17th day of December, 2020.


BILLY J. WILLIAMS
United States Attorney
District of Oregon

PAUL E. SALAMANCA
Deputy Assistant Attorney General

Environment and Natural Resources Division

*/s/  John P. Tustin*
JOHN P. TUSTIN
(he/him/his)
Senior Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone:  (202) 305-3022 / Fax:  (202) 305-0506
john.tustin@usdoj.gov

*Attorneys for Federal Defendant*