Nicholas S. Cady (OSB # 113463)
Cascadia Wildlands
P.O. Box 10455
Eugene, Oregon 97440
Tel: 541-434-1463
Fax: 541-434-6494
Email: nick@cascwild.org

*Additional Counsel Identified on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

CASCADIA WILDLANDS, an Oregon non-profit corporation; OREGON WILD, an Oregon non-profit corporation;

Plaintiffs,

vs.

UNITED STATES BUREAU OF LAND MANAGEMENT, an administrative agency of the United States Department of Interior,

Defendant,

and

SENECA SAWMILL COMPANY, an Oregon Corporation,

Defendant-Intervenor.

Civ. Case No. 6:20-cv-01395

PLAINTIFFS' SUPPLEMENTAL BRIEF ON REMEDY

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................ ii

**INTRODUCTION** ........................................ 1

**LEGAL STANDARD** ........................................ 1

**ARGUMENT** ........................................ 3

I. BLM'S ERROR IS SERIOUS ........................................ 4

II. VACATUR WILL NOT HAVE HIGHLY DISRUPTIVE CONSEQUENCES ........................................ 8

**CONCLUSION** ........................................ 12

# TABLE OF AUTHORITIES

## Cases

*Alaska Conserv. Council v. Fed. Hwy. Admin.*,
649 F.3d 1050 (9th Cir. 2011) ....................................................................9

*Allina Health Servs.v. Sibelius*,
746 F.3d 1102 (D.C. Cir. 2014)....................................................................2

*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001)....................................................................2

*Amoco Prod. Co. v. of Gambell*,
480 U.S. 531 (1987)....................................................................................4

*Cal. Cmtys. Against Toxics v. EPA*,
688 F.3d 989 (9th Cir. 2012) ....................................................................3, 8, 11

*Camp v. Pitts*,
411 U.S. 138 (1973)....................................................................................2

*Cascadia Wildlands v. Bureau of Land Mgmt.*,
410 F. Supp. 3d 1146 (D. Or. 2019) ..........................................................1, 4, 6

*Ctr. for Biological Diversity v. BLM*,
698 F.3d 1101 (9th Cir. 2012) ....................................................................9

*Ctr. for Envtl. Health v. Vilsack*,
No. 15-cv-01690-JSC, 2016 WL 3383954 (N.D. Cal. June 20, 2016)...............................2

*Ctr. for Food Safety v. Vilsack*,
734 F. Supp. 2d 948 (N.D. Cal. 2010) ..........................................................8

*Citizens to Preserve Overton Park v. Volpe*,
401 U.S. 402 (1971)....................................................................................2

*Curtis v. Loether*,
415 U.S. 189 (1974)....................................................................................2

*Friends of Pinto Creek v. EPA*,
504 F.3d 1007 (9th Cir. 2007) ....................................................................7

*Great Basin Res. Watch v. BLM*,
844 F.3d 1095 (9th Cir. 2016) ....................................................................9

*Humane Soc'y v. Locke*,
626 F.3d 1040 (9th Cir. 2010) ....................................................................3, 10

*Idaho Farm Bureau Federation v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) ........................................................................8, 9

*Klamath Siskiyou Wildlands Ctr. v. Grantham*,
No. 13-16186, 2016 WL 1056556 (9th Cir. Mar. 17, 2016)...............................................9

*Metcalf v. Daley*,
214 F.3d 1135 (9th Cir. 2000) ....................................................................7, 11

*Nat'l Family Farm Coalition v. United States EPA*,
966 F.3d 893 (9th Cir. 2020) ..........................................................................6

*Natural Res. Def. Council v. Houston*,
146 F.3d 1118 (9th Cir. 1998) .......................................................................10

*N. Plains Res. Council, Inc. v. Surface Transp. Bd.*,
668 F.3d 1067 (9th Cir. 2011) .........................................................................9

*Norton v. S. Utah Wilderness Alliance*,
542 U.S. 55 (2004).......................................................................................5

*Olmstead v. United States*,
277 U.S. 438 (1928).....................................................................................10

*Or. Natural Desert Ass'n v. Jewell*,
840 F.3d 562 (9th Cir. 2016) ...................................................................1, 2, 3

*Or. Natural Desert Ass'n. v. Zinke*,
250 F. Supp. 3d 773 (D. Or. 2017) ...................................................................4

*Ore. Natural Res. Council Fund v. Brong*,
492 F.3d 1120 (9th Cir. 2007) .........................................................................5

*Pit River Tribe v. U.S. Forest Serv.*,
469 F.3d 768 (9th Cir. 2006) ......................................................................7, 10

*Pollinator Stewardship Council v. EPA*,
806 F.3d 520 (9th Cir. 2015) ........................................................................3, 9

*Reno Air Racing Ass'n v. McCord*,
452 F.3d 1126 (9th Cir. 2006) .........................................................................2

*Save the Peaks Coal v. U.S. Forest Serv.*,
669 F.3d 1025 (9th Cir. 2012) ....................10

*W. Watersheds v. Zinke*,
441 F. Supp. 3d 1042 (D. Idaho 2020) ....................3, 10

**Statutes**

5 U.S.C. § 706....................1

43 U.S.C. § 1701....................4

43 U.S.C. § 1702....................5

43 U.S.C. § 1732....................5

43 U.S.C. § 2601....................7

**Regulations**

43 C.F.R. §§ 1601.0-5....................5

## INTRODUCTION

Nearly two years ago, this Court held that BLM's 2018 Thurston Hills Decision Record ("Thurston I") "arbitrarily and capriciously failed to designate a Recreation Management Zone," and ordered BLM to "designate and preserve a Recreation Management Zone prior to harvest." *Cascadia Wildlands v. Bureau of Land Mgmt.*, 410 F. Supp. 3d 1146, 1150, 1160 (D. Or. 2019) ("*Cascadia I*"). On remand, BLM made the deliberate choice to *again* propose a project that would log the "Recreational Management Zone," not "preserve" it. Plaintiffs Cascadia Wildlands and Oregon Wild thereafter sought judicial intervention for a second time, and this Court held *again* that BLM arbitrarily and capriciously failed to take any "*affirmative* steps to *preserve* the RMZ in any meaningful manner." ECF No. 35 at 11.

BLM does not get a third bite at the apple. The Court should vacate the action that it has twice held unlawful: BLM's failure to designate and preserve the Recreation Management Zone ("RMZ") as part of the 2020 Thurston Hills Decision Record ("Thurston II" or the "Project"). Vacatur of a successfully-challenged action is the default remedy for unlawful agency action under the Administrative Procedure Act ("APA"). 5 U.S.C. § 706(2)(A). There are no equitable reasons to depart from this default remedy, and BLM's error here was anything but "harmless." *See Or. Natural Desert Ass'n v. Jewell*, 840 F.3d 562, 570 (9th Cir. 2016).

## LEGAL STANDARD

Vacatur of unlawful agency action is the presumptive disposition under the APA, which directs that a "reviewing court *shall* . . . hold unlawful and *set aside* agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (emphases added).

The Supreme Court explains that if an agency's decision "is not sustainable on the

administrative record made, then the [agency's] decision *must be vacated* and the matter remanded to [the agency] for further consideration." *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (emphasis added); *see also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-14 (1971) ("[*i*]*n all cases* agency action *must be set aside* if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'" (quoting 5 U.S.C. § 706(2)(A)) (emphases added); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001) ("[A plaintiff who] prevails on its APA claim . . . is entitled to relief under that statute, which normally will be a vacatur of the agency's order").

Because vacatur is the presumptive statutory remedy under the APA, any departure from that remedy would be a form of equitable relief to the agency that has acted unlawfully. *See Curtis v. Loether*, 415 U.S. 189, 194–97 (1974) (distinguishing "legal rights and remedies" created by statute from "equitable relief"). The burden is thus on the defendant agency to show why "equity demands" anything less than vacatur of the unlawful agency action. *See Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1139 (9th Cir. 2006) (a party asserting an equitable defense "must show" that it satisfies all elements of the defense); *Allina Health Servs. v. Sibelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) (evaluating and rejecting government arguments that vacatur was inappropriate); *Ctr. for Envtl. Health v. Vilsack*, No. 15-cv-01690-JSC, 2016 WL 3383954, at *13 (N.D. Cal. June 20, 2016) ("given that vacatur is the presumptive remedy for a procedural violation such as this, it is Defendants' burden to show that vacatur is unwarranted").

The Ninth Circuit has authorized remand *without* vacatur only in "limited" or "rare" circumstances, and only when the agency opposing vacatur can show that "equity demands" a departure from the presumptive APA remedy. *See Oregon Natural Desert Ass'n*, 840

F.3d at 575 (directing district court to determine whether case presented one of the "rare circumstances" when the agency action should remain in force until reconsidered or replaced); *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992, 994 (9th Cir. 2012) (per curiam) ("we have only ordered remand without vacatur in limited circumstances"); *Humane Soc'y v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010) ("In rare circumstances, when we deem it advisable that the agency action remain in force until the action can be reconsidered or replaced, we will remand without vacating the agency's action.").

To determine whether a case presents one of the "limited" or "rare" circumstances where remand *without* vacatur may be appropriate, courts consider the (1) "seriousness of the agency's errors" and (2) "the disruptive consequences of an interim change that may itself be changed." *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015); *Cal. Cmtys.*, 688 F.3d at 992.

## ARGUMENT

There are no "limited" or "rare" circumstances warranting a departure from the presumptive remedy of vacatur. The Thurston II Decision Record violates the Federal Lands Policy and Management Act ("FLPMA") for a second time in the precise manner previously found unlawful by Judge McShane. BLM ignored its own planning framework and specific recreation management mandates to effectuate a predetermined timber sale. Only vacatur prevents illegal logging in this area and irreparable harm to the designated trail system. It further obligates the BLM to rethink its proposed timber harvest and make an informed decision in light of last summer's fires and further public input. *See W. Watersheds v. Zinke*, 441 F. Supp. 3d 1042, 1089 (D. Idaho 2020) ("vacatur will ensure the opportunity for objective evaluation of the [project], free of any taint.").

The BLM's error in this case is serious, and there are no disruptive consequences that justify a departure from the presumptive remedy. Plaintiffs respectfully request that the Court vacate BLM's unlawful decision.

## I. BLM's ERROR IS SERIOUS

The error here is serious: for a second time, BLM unlawfully approved a clearcut timber harvest in the RMZ, in direct contravention to the plain requirements set forth by Judge McShane in his prior order. Indeed, BLM's error undercuts the very reason that the RMZ was created. *See Cascadia I*, 410 F. Supp. 3d at 1156 (Judge McShane explaining that logging the RMZ prior to establishment defeats the Zone's very purpose).

When remedying a violation of a statute, the courts have a duty to vindicate the underlying purposes to be served by the statute. *See Amoco Prod. Co. v. of Gambell*, 480 U.S. 531, 542-543 (1987). The seriousness of BLM's error "should be measured by the effect the error has in contravening the purpose of the statue in question." *Or. Natural Desert Ass'n. v. Zinke*, 250 F. Supp. 3d 773, 774 (D. Or. 2017).

Here, the violated statute is the Federal Lands Policy and Management Act, which governs BLM management of federal public lands. More specifically it states:

> [P]ublic lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values; that, where appropriate, will preserve and protect certain public lands in their natural condition; that will provide food and habitat for fish and wildlife and domestic animals; and that will provide for outdoor recreation and human occupancy and use.

43 U.S.C. § 1701(a)(8). To achieve these ends, the BLM is required to "establish comprehensive rules and regulations after considering the views of the general public; and to structure adjudication procedures to assure adequate third-party participation, objective administrative review of initial decisions, and expeditious decisionmaking." 43 U.S.C. § 1701(a)(5). The BLM

is required to comply with these rules and regulations which are "established by law as guidelines for public land use planning, and that management be on the basis of multiple use and sustained yield." 43 U.S.C. § 1701(a)(7). "Multiple use" means "the management of the public lands and their various resource values so that they are utilized in the combination that will best meet the present and future needs of the American people" and explicitly includes "recreation" and "scenic values" and "not necessarily to the combination of uses that will give the greatest economic return or the greatest unit output." 43 U.S.C. § 1702(c).

To manage for this variety of values, FLPMA requires BLM to prepare Resource Management Plans ("RMPs") and to ensure that site-specific management actions area consistent with and conform to the governing RMP. 43 U.S.C. § 1732(a); 43 C.F.R. §§ 1601.0-5(b); 1610.5-3(a); *Ore. Natural Res. Council Fund v. Brong*, 492 F.3d 1120, 1125 (9th Cir. 2007); *see also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 69 (2004) (observing that the statutory directive in 43 U.S.C. § 1732(a) "prevent[s] BLM from taking actions inconsistent with the provisions of a land use plan.").

Here, the BLM through its recent regional planning efforts for the first time identified recreation as a dire need for our public forests in Oregon and dedicated a small portion of its land base to be managed for recreation values as explicitly contemplated by FLPMA. AR 3398-440. This is the first time the BLM in Oregon has dedicated trail systems for mountain biking and hiking in BLM's Upper Willamette Resource Area. AR 2407. BLM designated the land adjacent to the Willamalane Thurston Hills Natural area as an Extensive Recreation Management Area "intended for recreational development consistent with Willamalane Parks and Recreation District's goals to preserve views, enhance wildlife habitat and sensitive areas, and provide

recreation opportunities." *Cascadia I*, 410 F. Supp. 3d at 1151. To these ends and to protect these recreation opportunities, the BLM restricted some timber harvest in the area. AR 11376.

The APA default remedy of vacatur is essential to uphold the underlying purposes of FLPMA. Following Judge McShane's unambiguous opinion, the BLM again chose to ignore its recreation mandates and approved a decision that is plainly inconsistent with the planning framework of its RMP—thus violating FLMPA's core purpose. BLM's 2016 RMP requires that the Willamalane Extensive Recreation Management Area ("ERMA") must be managed in accordance with its planning framework. ECF No. 35 at 10 (citing AR 17076). Under the Willamalane ERMA, timber harvest is prohibited in the RMZ unless it fits within two narrow exceptions: (1) to protect/maintain recreation setting characteristics, and (2) to achieve recreation objectives. AR 16389. Despite the RMP's mandates and the Court's order, BLM failed to take any "*affirmative steps* to *preserve* the RMZ in any meaningful manner." ECF No. 35 at 11. "In fact, the current iteration of the Project proposed to log the identical area proposed in 2018." *Id.*

Committing the exact same unlawful action *twice* makes plain the seriousness of BLM's error. BLM took no steps to modify the Project in light of *Thurston I,* instead choosing to log the RMZ instead of preserving it. Such an obvious failure to adhere to the plain requirements of Judge McShane's prior ruling demonstrates that it is impossible for BLM to lawfully adopt the same or similar action on remand. *See Nat'l Family Farm Coalition v. United States EPA*, 966 F.3d 893, 929 (9th Cir. 2020) (*citing Pollinator*, 806 F.3d at 532). BLM's error here was not procedural or of a "technical nature," nor can the BLM "offer better reasoning" for its error on remand, because it has already been told twice that it needs to take "affirmative steps" to preserve the RMZ. *Id.*

Vacatur of the Thurston II Decision Record is also vital because it forces the agency to make a new decision, after a new NEPA public notice and comment process, properly informed by an accurate understanding of the required protections within this designated recreation area. Given that the BLM has previously attempted to circumvent a court order requiring the preservation of these trails, vacatur will ensure the BLM does not attempt to ram through this logging pursuant to its contract with Intervenor, and its consideration of the project will be "done under circumstances that ensure an objective evaluation free of the previous taint." *Metcalf v. Daley*, 214 F.3d 1135, 1146 (9th Cir. 2000) (setting aside decision due to NEPA violations, suspending a whaling contract, and ordering agency to re-start the NEPA process and prepare a new environmental assessment before issuing a new decision)*; see also Friends of Pinto Creek v. EPA*, 504 F.3d 1007, 1016–17 (9th Cir. 2007) (vacating Clean Water Act permit and remanding to agency where NEPA analysis failed to adequately consider and discuss mining discharges to creek); *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 788 (9th Cir. 2006) (vacating extensions of geothermal leases and decision approving geothermal plant upon finding NEPA violations). Vacatur here ensures protection of the RMZ and furthers the underlying purpose of FLPMA.

To the extent Defendants or Intervenors argue that the O&C Act is relevant to remedying FLPMA and APA violations, the O&C Act specifically requires that timber harvest be conducted in a way that protects recreation. The Act specifies that timber shall be "sold, cut, and removed in conformity with the principal of sustained yield for the purpose of providing a permanent source of timber supply, protecting watersheds, regulating stream flow, and contributing to the economic stability of local communities and industries, and providing recreational facilities." 43 U.S.C. § 2601. Vacating the BLM's decision to log in disregard for the protection of recreation

values is consistent with underlying direction in the O&C Act to conduct timber harvest that provides recreation facilities.

## II. VACATUR WILL NOT HAVE HIGLY DISRUPTIVE CONSEQUENCES

Vacatur in this case will not have any "highly disruptive" consequences, because it will maintain the status quo. In environmental cases, the "rare circumstance" in which equity mitigates against vacatur involve situations where vacating the decision would *harm the environment* and not serve the underlying purposes of the statute in question. *See Cal. Cmtys.*, 688 F.3d at 991-02*; Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392, 1401-05 (9th Cir. 1995) (leaving unlawful ESA listing rule in place to protect imperiled snail until new listing rule is completed).

For example, in *California Communities*, the EPA requested a voluntary remand to reconsider a rule that approved an air quality plan for southern California, and which would provide emissions credit to a nearly completed power plant. 688 F.3d at 991-92. Although the Ninth Circuit held the final rule invalid, it also found that "[t]he delay and trouble vacatur would cause are severe." *Id.* at 993. Vacatur would have delayed the completion of the new power plant, without which "the region might not have enough power next summer, resulting in Blackouts. Blackouts necessitate the use of diesel generators that pollute the air, the very danger the Clean Air Act aims to prevent." *Id.* at 994. The court also found that halting the plant's construction would be "economically disastrous" to the "billion-dollar-venture." *Id.* The "billion dollar-venture" at stake in *California Communities* represents the only case Plaintiffs are aware of in which the Ninth Circuit has cited a disastrous economic consequence as "highly disruptive" and justifying a departure from vacatur. *See Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 953 (N.D. Cal. 2010) ("In light of the limited circumstances in which the Ninth Circuit has

determined that equity warranted remanding without vacatur, it is not clear that economic consequences is a factor the Court may consider in Environmental cases").

In *Idaho Farm Bureau Federation v. Babbitt*, the Ninth Circuit declined to vacate a rule that had listed the Bureau Hot Springs Snail as endangered, despite affirming the district court's holding that the U.S. Fish and Wildlife Service had committed procedural error in making the listing decision. 58 F.3d at 1401-05. Because the snail existed in only a single spring, the court was concerned about "the potential extinction of an animal species." *Id.* at 1405. Taking into account that the purpose of the Endangered Species Act is to protect imperiled species, the court concluded that those "concerns weigh toward leaving the listing rule in place while [the Service] remedies its procedural error." *Id*. at 1406; *see also Klamath Siskiyou Wildlands Ctr. v. Grantham*, No. 13-16186, 2016 WL 1056556, at *2 (9th Cir. Mar. 17, 2016) (finding one of those "rare circumstance" where vacatur of the challenged decision to issue grazing permits would result in reinstating prior permits containing "terms less protective of forest resources").

By contrast, the Ninth Circuit routinely vacates unlawful agency action that would cause adverse environmental harm, even if there are adverse economic effects of vacatur on agencies or private parties. *See, e.g.*, *Great Basin Res. Watch v. BLM*, 844 F.3d 1095, 1111–12 (9th Cir. 2016) (vacating Record of Decision for mine upon finding NEPA analysis unlawful); *Pollinator Stewardship Council*, 806 F.3d at 532–33 (vacating agency's approval of powerful new agricultural insecticides); *Ctr. for Biological Diversity v. BLM*, 698 F.3d 1101, 1128 (9th Cir. 2012) (vacating decision authorizing gas pipeline upon finding NEPA and ESA violations); *N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1072, 1100 (9th Cir. 2011) (vacating approvals authorizing construction of a 130-mile railroad line to haul coal upon finding NEPA violations); *Se. Alaska Conserv. Council v. Fed. Hwy. Admin.*, 649 F.3d 1050, 1054–56,

1059 (9th Cir. 2011) (vacating decision approving a new highway and ferry terminal upon finding NEPA violations); *Humane Soc'y*, 626 F.3d at 1048, 1053 n.7 (vacating permits that might result in temporarily increased predation by sea lions on protected fish); *Pit River Tribe*, 469 F.3d at 773, 784, 788 (vacating lease extensions that would have allowed geothermal projects throughout 266,800 acres of national forest land upon finding NEPA violations); *Natural Res. Def. Council v. Houston*, 146 F.3d 1118, 1129 (9th Cir. 1998) (vacating service contracts that supplied water to irrigation and water districts).

In this case, vacatur will *protect* the public and the environment by ensuring that BLM does not illegally log designated trails and irreparably damage a highly anticipated recreation site, which is one of the explicit underlying purposes of FLPMA. Moreover, BLM admits that the proposed timber harvest will increase the fire hazard in at least the short term by converting fire-resistant mature stands with low fire hazard to slash and brush stands with a high fire hazard. AR 2341, 71, 76. In only 5-10 years, these slash and brush stands would become dense, young conifer plantations that not only also have a high fire hazard but are precisely the very same type of flammable stands that fueled the disastrous Holiday Farm Fire. As Oregon is currently witnessing first-hand the effect of climate change with record high temperatures and increased wildfire severity and frequency, the adverse environmental harms from the Project demand vacatur.

BLM itself will suffer no highly disruptive effects from vacatur of the ROD. *See Save the Peaks Coal v. U.S. Forest Serv*., 669 F.3d 1025, 1034 (9th Cir. 2012) (noting the "public interest in ensuring that the [agency] complied with federal law); *see also Olmstead v. United States*, 277 U.S. 438, 485 (1928) (Brandeis, J., dissenting) ("In a government of laws, existence of the government will be imperiled it fails to observe the law scrupulously."). While initial road

reconstruction and culvert work occurred in early 2019, no timber harvest activities have begun, and the project has been suspended since November 2019. ECF No. 20 ¶¶ 11-12. If the BLM still wishes to proceed with logging, it is going to have to make substantive changes to this project. This will necessitate revising the EA and issuing a new decision as all action alternatives that involved logging and trails construction contemplated logging the RMZ. AR 3614-20. Therefore, vacating the decision and underlying EA will not have highly disruptive effects to the BLM.

Additionally, vacatur will ensure the BLM issues a revised EA which has a number of benefits. First, related to the timber harvest, BLM identified two needs for the Project: (1) the need to adjust the age class distribution to create more acres in the 0-10 age class, and (2) the need to contribute timber to the 2018 Allowable Sale Quantity ("ASQ"). AR 3596-98. Given that the 2020 Holiday Farm Fire was a predominantly stand-replacing fire that burned approximately 18,545 acres of BLM land, 5,479 acres of which were Harvest Land Base, there is likely no longer a need to create more acres in the 0-10 age class. ECF No. 27 ¶¶ 4-7. Second, vacatur will ensure the BLM issues a revised EA which will take into consideration the effects of the 2020 fires. Thus, vacating the decision and EA will ensure the BLM's logging considerations are "done under circumstances that ensure an objective evaluation free of the previous taint," *Metcalf,* 214 F.3d at 1146 (9th Cir. 2000), and takes into considerations the impacts of the recent nearby fires.

The disruptive effects on the intervenor also are far from "disastrous," or even disruptive. *Cal. Cmtys*., 688 F.3d at 994. Again, regardless of the form of remedy, BLM will have to revise its underlying EA and issue a new decision. Further, the Thurston Project is only one of twenty-six timber sales intervenor has under contract with BLM, representing only 4.0 million board feet, or five percent, of the total 77.5 million board feet in the twenty-six timber contracts, a

project which has been on hold since 2019 . ECF No. 29 at ¶ 9. For this timber sale, industry Intervenor "put down a bid deposit of, as a form of surety bond, of approximately $109,400." ECF No. 29 at ¶ 10. Even acknowledging this as "economic harm," the amount is "still not of the magnitude the courts recognize as warranting a suspension over vacatur." *W. Watersheds Project*, 441 F. Supp. 3d at 1087 (citing *Cal. Cmtys.*, 688 F.3d at 993-94). In any event, nothing prevents Intervenors from resuming the Project if BLM's new decision again proposes a timber harvest. Vacatur merely preserves the recreational and environmental status quo until such time as a lawful environmental assessment and record of decision is completed.

**CONCLUSION**

Vacatur of the 2020 Thurston Hills Non-Motorized Trails and Forest Management Environmental Assessment and Decision Record will (1) allow the BLM to make a new and fully informed decision on whether to proceed with a timber harvest in trails area, and (2) allow the public a full and fair opportunity to review all evidence, in a fresh NEPA review, including any new findings or analyses BLM makes in response to the Holiday Farm Fire. On the facts of this case, the BLM cannot carry its burden to show that this is a "rare" circumstance that would warrant an equitable departure from the statutorily mandated, presumptive remedy. For these reasons, Plaintiffs respectfully request that the Court follow Ninth Circuit precedent and vacate the Project's unlawful Decision Record and underlying Environmental Assessment.

Respectfully submitted this 6th of July, 2021.

/s/ Nicholas S. Cady
Nicholas S. Cady (OSB#114363)
Cascadia Wildlands
P.O. Box 10455
Eugene, Oregon 97440
Tel: 541-434-1463
Fax: 541-434-6494
Email: nick@cascwild.org

/s/ B. Parker Jones
B. Parker Jones (OSB # 191163)
Daniel C. Snyder (OSB # 105127)
Law Offices Charles M. Tebbutt
941 Lawrence Street
Eugene, Oregon 97401
Tel: 541-344-3505
Email: parker@tebbuttlaw.com
dan@tebbuttlaw.com

*Counsel for Plaintiffs*